Argued and submitted January 4, affirmed February 27, reconsideration denied April 19, petition for review denied June 4, 1985 (299 Or 251)

# MARINELLI,
*Appellant,*

*v.*

# FORD MOTOR COMPANY et al,
*Respondents.*

(A8309 06099; CA A31727)

696 P2d 1

J. Randolph Pickett, Portland, argued the cause for appellant. With him on the briefs were Ron D. Bailey and Sandra A. Hansberger, Portland.

Mildred J. Carmack, Portland, argued the cause for respondent Ford Motor Company. With her on the brief were Roland F. Banks, Ancer L. Haggerty, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Lee Aronson, Portland, argued the cause for respondents Marv Tonkin Ford Sales, Inc., and Owen Chevrolet-Olds, Inc. With him on the brief was Holmes, DeFrancq & Schulte, P.C., Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff brought this action against defendants Ford Motor Company, Marv Tonkin Ford Sales and Owens Chevrolet-Olds, contending that their activities in connection with the design, manufacture, sale, testing and inspection of a pickup truck contributed to plaintiff's injuries when an accident occurred while he was a passenger in the vehicle. Plaintiff stated claims for strict liability and negligence. The vehicle was "first purchased for use or consumption," ORS 30.905(1), in October, 1974.[1] Plaintiff was injured in February, 1983. The trial court granted defendants' motions to dismiss on the ground that the action is barred by ORS 30.905(1), the eight-year statute of ultimate repose for "product liability civil actions." Plaintiff appeals, and we affirm.[2]

ORS 30.905(1) provides:

"Notwithstanding ORS 12.115 or 12.140 and except as provided in subsections (2) and (3) of this section, a product liability civil action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption."

ORS 30.900 states:

"As used in ORS 30.900 to 30.920, 'product liability civil action' means a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:

"(1) Any design, inspection, testing, manufacturing or other defect in a product;

"(2) Any failure to warn regarding a product; or

"(3) Any failure to properly instruct in the use of a product."

Both provisions were enacted by Oregon Laws 1977, chapter 843. Section 5 of that act provides:

"This Act takes effect on January 1, 1978, and applies only

---

[1] Plaintiff was not the purchaser or owner of the vehicle.

[2] Plaintiff also named as defendants the driver of the car, a physician and the hospital at which he was treated. The trial court's disposition does not terminate the case as to those defendants, and they are not involved in this appeal. Appropriate language was included to make the judgment in favor of Ford, Tonkin and Owens final. ORCP 67B. The term "defendants," as used in the body of this opinion, refers to Ford, Tonkin and Owens.

to causes of action, claims, rights or liabilities accruing after December 31, 1977."

■     Plaintiff argues in the first assignment of error that, although he was injured after the 1977 act took effect, the act should not be construed to apply to an action involving a product that was sold to a consumer in 1974. The first point plaintiff makes is that "the Oregon Supreme Court has indicated a reluctance to apply statutes retroactively," citing, *e.g., Joseph v. Lowery,* 261 Or 545, 495 P2d 273 (1972). However, the principle that retroactive application of statutes that affect substantive rights is not preferred has little if any relevance to the interpretation of a statute that *specifies* the time when it becomes applicable. *See Whipple v. Howser,* 291 Or 475, 632 P2d 782 (1981). The statute here specifies that it applies "to causes of action, claims, rights or liabilities accruing after December 31, 1977."

■     Plaintiff acknowledges that his cause of action did not accrue until the accident occurred in 1983. He contends, however, that he had "rights" and "claims" and that defendants had "liabilities" that existed as of the time the vehicle was initially sold in 1974. Plaintiff refers to the Supreme Court's statement in *Heaton v. Ford Motor Co.,* 248 Or 467, 471, 435 P2d 806 (1967), that

> "* * * [t]he user has *the right* to expect a reasonably safe design and reasonable quality controls in fabrication according to that design. * * *" (Emphasis supplied.)

Plaintiff concludes:

> "It follows that the purchaser or user's right to bring a claim based either on negligence or products liability principles accrued at the time of purchase of the product and carried with it a right to bring such action within 10 years of the date of the manufacture or sale. *See* ORS 12.115. Defendants also had a 'liability' (that of seller) which also accrued at the time of purchase."

Defendants argue, in effect, that the terms "causes of action," "claims," "rights" and "liabilities," as used in Oregon Laws 1977, chapter 843, section 5, refer to interests that arise from injuries or that relate to litigation that has been or can be brought. According to defendants, the terms do not encompass an owner's or user's abstract interests in the safety of a

product that was purchased before January 1, 1978, but had produced no injury by that date. Ford states in its brief:

"The most likely reason for including that additional language is to cover all concepts related to that of a 'cause of action' — concepts such as that of a 'claim for relief' (at that time a concept embodied in federal practice but not yet in that of this state), a 'right of action,' and the converse idea of the liability of one party to another. The most significant thing about the 1977 legislature's choice of language in section 5 of chapter 843 is that a claim, right or liability must have *accrued* on or before December 31, 1977 in order to make the new statute of repose inapplicable. A claim for relief, right of action, or liability does not 'accrue' until it is enforceable by action. *See, e.g., Seattle-First Nat'l Bk. v. Ore. Pac. Ind.,* 262 Or 578, 583, 500 P2d 1033 (1972)." (Emphasis Ford's; footnote omitted.)

Plaintiff replies:

"* * * Respondent argues the legislature really intended to say 'claim for relief', 'right of action' and 'the converse idea of the liability of one party to another.' Had the legislature intended this language, the legislature would have used it.

"* * * If 'accrue' in the instant case, when applied to the words 'cause of action', 'rights', 'claims', or 'liabilities' means that a cause of action must exist, why did the legislature include the words 'rights, liabilities, claims' when 'cause of action' says it all? * * *"

Plaintiff is correct in maintaining that "claims," "rights" and "liabilities" presumably mean *something* different than "cause of action." However, we do not agree with plaintiff's understanding of what they mean. The four terms are used in the same statutory context and, of the four, only the word "rights" *could*—at least from an abstract definitional standpoint—refer to something that "accrues" before there is an injury or a basis for bringing an action. The word *could also* refer to rights that arise out of an injury or to litigation-related rights. We conclude that, like the words that surround it in the statute, the legislature intended the word "rights" to have the latter meaning. In addition to the context of section 5 itself, the act as a whole militates toward that conclusion. All of the substantive provisions of the act relate to litigation or to the allowable time for bringing an action in a product liability case. We do not think that the legislature intended a single word in the section of the act that prescribes its effective date

to refer to the nonoccurrence of an event that must have occurred before any other word in the act can have any meaning. We disagree with plaintiff's argument that ORS 30.905(1) cannot apply to actions involving products that were first purchased for use or consumption before January 1, 1978, and we therefore reject his first assignment of error.

**3.** Plaintiff's second assignment is that the trial court erred by dismissing his negligence claims on the basis of ORS 30.905(1). Plaintiff argues that the statute applies only to allegations of strict liability in tort. Defendants argue, *inter alia,* that the term "product liability civil action," as defined by ORS 30.900, embraces *all* theories a plaintiff can adduce in an action based on a product defect.[3] Defendants' argument finds direct support in *Philpott v. A. H. Robins Co., Inc.,* 710 F2d 1422 (9th Cir 1983). Far more significantly, defendant's argument is supported by the clear language of the statute. ORS 30.900 refers to actions for injuries arising from:

"(1) Any design, inspection, testing, manufacturing or other defect in a product;

"(2) Any failure to warn regarding a product; or

"(3) Any failure to properly instruct in the use of a product."

Nothing in that language suggests that the 1977 act was intended to apply to defects or failures that give rise to strict liability but not to defects or failures that result from negligence. Moreover, although the legislature is free to attach different limitation periods to different allegations that are *highly* likely to be made in the same action, we do not think that it intended to do so here.[4]

---

[3] Ford aptly notes in its brief:

"In plaintiff's brief he sometimes uses the phrase 'product liability action' to refer to an action based on the theory of strict liability in tort. Although that usage appears in some of the reported decisions of the Oregeon appellate courts, it is important for purposes of this assignment of error to note that an action to impose liability for a defective product — a 'product liability action' — may be brought on a number of legal theories in addition to that of strict liability. See, generally, Prosser, *The Law of Torts* (4th Ed. 1971) Ch. 17, pp. 641 ff."

[4] Plaintiff and defendants base some of their arguments here on ORS 30.920 and 30.925, and the Ninth Circuit in *Philpott* based some of its analysis on ORS 30.925. ORS 30.920 and 30.925 were enacted by Oregon Laws 1979, chapter 866, and we do not find the arguments and analysis that turn on those sections to be particularly useful in determining whether the definition of "product liability civil action" in ORS 30.900, enacted in 1977, reaches negligence as well as strict liability claims.

■     Plaintiff's final contention is that, if ORS 30.905 applies to and bars his action, it violates the impairment of contract provisions of Article I, section 10, of the federal constitution and Article I, section 21, of the state constitution, as well as Article I, section 33, of the state constitution. We held in *Davis v. Whiting Corporation,* 66 Or App 541, 674 P2d 1194, *rev den* 297 Or 82 (1984), that ORS 30.905(1) is consistent with Article I, section 10, of the state constitution (guaranteeing remedies by due course of law) and with the Equal Protection and Due Process Clauses of the Fourteenth Amendment. The statute is also consistent with the constitutional provisions that plaintiff argues that it violates. The contract rights that arise from the sale of a vehicle do not bind the legislature to retain the remedies that existed at the time the vehicle was sold.[5]

Affirmed.

---

[5] The parties could, of course, have *agreed* not to assert statute of limitations defenses that were not available at the time of the sale.

Our discussion of this argument presupposes but does not hold that plaintiff, whose connection with the vehicle was solely as a passenger, *has* any contract rights that are relevant here.